Our first argued case this morning is No. 22-720, Demartino v. New York State Department of Taxation. Mr. Ha. Good morning, Judge. Thank you. May it please the Court, Brian Ha for the Plaintiff's Appellants Frank Demartino and Taco Construction Corporation. This case stems from a state withholding tax liability from 2005. In February 2021, more than 16 years later, as Taco was seeking to have its corporate status reinstated to pursue a lawsuit in state court against a different state agency, DASNY, the dormitory authority of the State of New York, DASNY around that time apparently had some communications with DTF, which we believe prompted DTF to issue a notice of demand to Taco for an additional tax liability of approximately $21,000, all stemming from the 2005 tax year. The most salient fact here is that Taco had already paid off its 2005 withholding tax liabilities in full and has also paid off all the interest and penalties that had accrued up to the time the full payment was made sometime in December of 2019. Did he pay off on his own behalf or on the company's behalf? I'm sorry, Your Honor? Did he pay off on his own behalf or on the company's behalf? Well, what happened was there was a tax warrant issued against Mr. DiMartino as the responsible person for the company. The warrant was issued back in around 2007. The critical thing here is that... July of 2007. I'm sorry? July of 2007. Correct. So we have that. We have the tax warrant that's issued to DiMartino in July 2007 for $16,700-something, right? But then we know that nine months earlier, there was a warrant issued to Tadco of $19,000-some odd dollars. So we know that... Don't we know, therefore, that the responsible person assessment did not include the whole liability that Tadco owed? No, it was the full liability because at the time, the liability, the principal liability was less than the $16,000, the amount of the warrant on Mr. DiMartino. What Mr. DiMartino overlooks is that there's an assessment made against the corporation in early 2006. Once that assessment is made, interest starts to run against the corporation. Then there's an assessment made against Mr. DiMartino. There's a separate interest clock as to Mr. DiMartino. That starts to run. And so there are two sets of interest running, one against the original assessment against the corporation, one against him. He paid off his, but the period of time of the interest running against the assessment against the corporation was longer. And so, therefore, there was a larger amount. That's what explains the difference. But that's what's been claimed, but that was never presented in the proceedings below. The assessment against the company, I mean, this is raised for the first time on this appeal here. Well, but it's plain from the records. It's easy to find in the records and understand. And the tax statute's plain on its face. Should we, you want us to send it back to the district court? Well, that was never presented to us. I mean, we've alleged in the complaint that it's a- Well, it's simple. It's very easy to understand with the timings of the tax warrants and the assessments. It just makes perfect sense. But it was never presented to us before. That's why we brought this action. I think I have your point that it wasn't argued below, which maybe is true. But do you think that it's inaccurate? I have not had a chance to look at it. We were not aware of it. As far as Mr. DiMartino knew, when he started making the payments on the warrants, he was trying to pay it off. And he thought he was paying off the entire company debt. And because the warrant amount was more than the principal balance that was due when it was assessed, we reasonably believe that it could- He reasonably believes that it was interest. Although, of course, the interest rate is something like 7%, right? And it had been pending against the company for at least a year, right? So 7% of $16,000 is $1,100, something like that. So wouldn't the interest have been more if he had to pay all the interest that was owing to the- on the company's account? I don't think so because- well, the interest- the discrepancy here is about $700, $600-something. I believe that's close to the amount- I'm not sure what the exact interest rate was at the time. But a partial payment was made against the principal liability of $20,000. So there was only $16,000 due and owing. Right. And I'm not sure when they just started to clock on the interest. It wasn't from the 1st of 2005. So whatever point it was running, the $600-$600 or so dollars, that seemed like a reasonable amount of interest that would have accrued on the principal liability at that point. Because the warrant was issued sometime in July 2007. The liability was from 2005, would have been due sometime in 2006. So it wasn't a lot of time to have it elapsed. So from that point, that's why it seemed- that seemed to us to be the interest that was- had accrued on the principal liability, Your Honor. Okay, it seemed to be the interest. But do you think that it's possible that there was a separate interest charge on the company's account that wasn't carried over to the responsible person? We have no reason to believe that was the case. I mean, we had prior to bringing the- But I'm not asking what you had reason to believe was the case. I'm just asking what actually is the case. So what do you think explains the discrepancy? Your allegations are that the state made up the charges. Is that right? They raised it for the first time on appeal. We had never seen the records for it. Again, they had ample opportunity to raise it below. We had discussions about this matter pre-litigation to try to resolve it. It was never presented to us. They only sent us the consolidated tax liability summary sheet, which we attached to the complaint. That's all we had to go on. And that showed the amount against the company and against Mr. DiMartino. Right, but that doesn't actually show the balances, right? That just shows that the money that Mr. DiMartino was paying was credited to the company's account. But you're right. It doesn't show the balance that either he or the company owed. What it does show is that it shows that the payments were made until the entire liability was paid off in full. So with the last payment made in December of 2019, it zeroed out the account from both Mr. DiMartino and Tadco. And right after the payment was made, the state issued a satisfaction of judgment that was filed as far as Mr. DiMartino was concerned. That satisfaction of the judgment for him, right? That means that he paid out what he was owing based on the tax warrant that was issued to him, meaning he was to owe the responsible person assessment. Which is the same amount as the principal liability that Tadco owed, plus it's just up to that time. Right. Okay. Well, thank you, Mr. Ha. You've reserved time for rebuttal, so we'll hear from you again. But let's turn to the appellee, Mr. Trento. Thank you, Your Honors. May it please the Court. Andrea Trento from the Office of the Attorney General on behalf of the state appellees. I think it's helpful to start with the record. If I could address a couple of points that Mr. Ha made about what the statements that are included in the record actually reflect. And perhaps explain Mr. Ha represented that in his view, the additional amounts on the warrant that was assessed to Mr. DiMartino above the $16,000 or so in principle reflected interest accrued to Tadco. First, that wasn't the case. Because what was issued to Mr. DiMartino was a tax warrant. A tax warrant, as a matter of course, is not going to be issued until after a notice of deficiency is sent to a taxpayer. And the notice of deficiency operates as an assessment and at a time due. There was some separate document that notified him of his responsibility for the responsible person assessment. And it's only later that he was issued the tax warrant. You have that document that made him liable for the responsible person assessment in the record, right? That's correct. That's not in the record. But what the interest that has began to accrue that is reflected in the warrant against Mr. DiMartino reflects is interest that began to accrue against the assessment that was issued to Mr. DiMartino. Do we know when the assessment was issued against Mr. DiMartino? It's not in the record. I don't have that. But the tax warrant is not going to be the first document, the first instrument that Mr. DiMartino- I mean, there's a lot of interest that's accruing, right? There's like $600 some odd of interest if it started out at $16,094 or whatever the company's liability would be. If it started out at $16,000 and the interest is over the period in question, at least based on the public records available as to what the statutory interest rate in New York was, I think we can tell going back to about 2012 what it was. It fluctuated between- State of New York? I don't have that information. Well, there's a default statutory interest rate of 7.5. 7.5 percent. That's correct, Your Honor. And so even applying 7.5 percent on a $16,000 principle, you're looking at about $1,200 a year in interest. So $600 is about six months? It's about six months. Or do we think maybe he was assessed at six months earlier? That's- I mean, just working back from the date of the tax warrant. But there isn't anything in the record that establishes that, right? In fact, we don't have- I mean, we have these records that show credits of Mr. DiMartino's payments against the Tadco account, but we don't have a balance sheet or anything that shows how much Tadco owed or how much he owed. Why don't we have that in the record? Why wouldn't you have introduced that? It wasn't pled, Your Honor. The warrant is a public document that we can point the court to. To the extent there was a notice of deficiency sent to Tadco, Tadco would have received that. Tadco would have received the warrant that was issued to it six or nine months before the warrant issued to DiMartino. This is all information. In terms of notice to Tadco, this is all information that would have been in the possession of Tadco. They certainly would have had notice of it. To the extent there wasn't and there's been an error and they weren't given notice, and that's something they can raise in the state proceedings that the federal law directs challengers to- Yes, Your Honor. The statute suggests that maybe you can't charge interest and penalties, and we have this opinion that you cite from the New York State Tax Appellate Tribunal that says actually 685G doesn't allow you to charge the interest and penalties. But then you say in your brief that you can charge interest and penalties, but you don't as a matter of a discretionary policy. So which is it? That's a fair question, Your Honor. The current statute does allow assessment of accrued interest to the corporation against the responsible person. But importantly- But why didn't-you're saying that that's a different statute than the tax appellate tribunal was considering in that- Section 685G of the New York tax law was amended in 2009 to allow that. But it began accordingly with the tax year 2009. We're here talking about the tax year 2005, and the law in 2005 of section 685G- This is when the principal debt accrued, and that's also when in 2006 or 2007-2007 certainly is when the warrant issued as to DiMartino was issued. But the law at the time, section 685G, did not authorize the state to seek interest accrued against the corporation from a responsible person. Is this the current language of the statute, that the owner is liable for the total amount of tax evaded or not collected or not accounted for and paid over, and, two, the interest that has accrued on the total amount of tax evaded on this date-on the date this penalty is first imposed until the penalty is paid with interest thereon? That's the current statute, right? If it's 685G, I think that's right, Your Honor. There's a sub-1 or a sub-i and a sub-double i. Sub-i just says the total amount of the tax evaded, and that seems to only refer to the principal. Correct. And then sub-2 says the interest that has accrued on the total amount of tax evaded on the date this penalty is first imposed until this penalty is paid with interest thereon, which I guess it's possible to read that as allowing the amount of interest that has accrued until that point, or it's possible to read it as saying the interest won't accrue until the penalty is first imposed. It sounds like you read it the first way. Is that right? Either way, Your Honor, that sub-2 only came into being in 2009, so it's just not relevant to the responsible person assessment that was issued to Mr. DiMartino. Okay, so when you say in your brief that you have the discretion to impose the charges for the interest as a penalty, you don't think you have that discretion compared to Mr. DiMartino because his conduct was before the amendment? That's correct, Your Honor. It was not only a policy. So you're not saying that you were not allowed to charge the interest and the penalty? That's another reason why the additional amounts on the warrant that were issued to Mr. DiMartino do not reflect the interest that was accrued to Tadco. Okay, and so do we know that from – so we have the tax warrant that was issued to Tadco that says the $19,000, and then nine months later Mr. DiMartino gets the $16,000 warrant, so we know that the company had a higher – but how do we know that that's interest payments? Did the district court make a finding about that? The district court just seemed to sort of assert this must be taxes. Well, the district court didn't have – there's not a factual record explaining exactly what each component of the payment is. What there is are the statements that show what payments were credited to Tadco, and the initial payments as a matter of prioritization, the initial $16,000 or $20,000, whatever it was, payments were credited to the principal tax balance. So if there isn't a record showing where the charges came from, was it premature to dismiss the case if we don't know where the charges came from? No, Your Honor, because these charges are all part and parcel of the administration of New York's tax system. You're looking at the three-part test articulated by this court in the Association for Accessible Medicine's case. You look at three components to determine whether an assessment is a tax. You look at where the funds go to, how they're allocated by the state. And in this case, whether it's penalty, whether it's tax, whether it's interest, under New York law, these funds go into the general treasury fund for the benefit of the state. But doesn't he allege in his complaint that it's kind of a made-up charge that the state is just being vindictive toward him because he brought a lawsuit? He does, but the record that the court can take judicial notice of simply doesn't support that. It's not a well-pled allegation because- Okay, so in response to my question about how do we know that this is a tax, the evidence, the reason we can conclude that it is a tax is because of the tax warrant of which we could take judicial notice. That's one of the points, Your Honor. So what else is there? And that wasn't before the district court, right? So I guess, how did the district court conclude that this was tax? What was before the district court was the argument that we've consistently made, which was the amount that was paid by DiMartino on his tax warrant did not reflect the amount that was owed by the company. That's a point that we've made on the record that was before the district court and have made consistently. It hasn't been waived, and what we have done for this court on appeal is point the court to- But the reason why we know that, so he alleges that his liability is the company's liability, right? But the reason why we know that there's a disjunction between his liability and the company's is what? The laws of the state of New York? Your agency's policies? The laws of the state of New York, Section 685G. But you take the position the laws allow you to charge the penalty in tax? Not at the time in 2005, so that's point one. And then point two is we have the warrant that's in the public record that shows that the amount that was- the amount of the warrant that was issued as to Tadco was $3,000 or some odd dollars greater than the amount of the warrant that was issued to Mr. DiMartino. And it was issued some seven or eight months before Mr. DiMartino- But the district court didn't consider the tax warrant, right? That wasn't before the district court. No, not the tax warrant, but the district court- So how did the district court know that this was tax liability? The district court stepped back and recognized this case for what it is. It's a challenge to a tax assessment by a taxpayer, whether it's based on a made-up charge or whether it's based on a miscalculation, whether it's based on some ultra-vires assessment that the state tax agency didn't have the authority to do. I see what you're saying. So you're saying that even if the allegations of the complaint are correct, and it was the taxing authority being vindictive and making up a charge, it still purports to be a tax and therefore still falls under the Tax Injunction Act. Is that your position? A plaintiff can't simply allege this is made up against me, I don't know what this tax is for, and get into federal court and plead around the Tax Injunction Act. That's just not what it's there for. The point is that there's a basis in law with regard to the taxing scheme, and there's a remedy. He just doesn't get to go to federal court when, A, there's a basis in state law and he's got a remedy in state court. That's correct, Your Honor. Thank you. I see my time is up. Okay, thank you very much, Mr. Trinto. We'll turn back to Mr. Ha on the bill. Your Honor, just very briefly, it's apparent from the state's argument that pretty much everything that they were relying on factually is not in the record. They were relying on stuff outside the record. None of this was raised below. We did not know any of this stuff about the assessment against TACO. Do you disagree that we can take notice of the tax warrant? It is a publicly accessible official document, right?  Your claim is that they were out to get your guy, right? Well, yes. And the question was whether the court had subject matter jurisdiction. The state answers and says, wait, here's the statutory scheme. This is a tax. The money goes to the general revenue, and the Tax Injunction Act precludes a federal court from hearing this. I'm happy to address that, Your Honor. First of all, the three-part test- Why can't the state rely upon a statute that's in the public domain? That's what we do, isn't it? Well, two things. First, with regard to the Tax Injunction Act, to the extent that this is a penalty and not interest, which is what we've contended- Well, interest is not a penalty if it's for losses used to the money. This tax has been owed for, what, 15 years? It is if it's been paid in full, Your Honor. And we've paid penalties. We've paid over $20,000. Well, that's the question. So we have to understand how the statute works vis-à-vis warrants and or assessments, don't we? But for some reason, they would never present- I'm just answering my question. Do we have to understand how the warrants work and how they start the clock running? But even on- I guess the answer is you don't want to tell me. No, we do, Your Honor. But the thing is, even on their claim, the $19,000, that does not appear to be interest. I don't think Mr. Trent could- Your theory is because they charged him, they continued to charge him interest, somehow that was vindictive, right? 16 years after the fact, it set out a demand for it. If it was a function of statute, you'd lose. The district court was correct in dismissing your case. Is that correct? No, Your Honor. But even with the $19,000, that does not- What if it purely was a function of the statute? Did the district court have jurisdiction under the tax adjustment? Yes, it does. Why? Because the statute's punitive? Let's say a taxpayer owes the state $20,000. Does not dispute the obligation, pays it off in full, pays the whole thing on time, and years later- Let me give you a hypothetical. A taxpayer is a responsible person. The corporation didn't pay withholding taxes, which this corporation did not do. The corporation's liable, the responsible person's liable. The warrant's issued against the corporation on day one. The warrant's issued against the responsible person on day 360. The interest accrues against the corporation for 360 days before the interest, before the warrant's issued against the taxpayer. Now, as to whether the taxpayer picks up the full level of interest or just starts an interest clock separate apart, that's a function of the statute, isn't it? Right. And if the taxpayer pays off only his interest in tax, but there's still a lot of tax left from the original warrant, and state law makes him liable for that, is that a penalty? Hypothetically, Your Honor, but that's a hypothetical because we have none of that in the record. We don't know any of that. The $19,000 that they claim was assessed, we don't know if that was interest or penalty because the amount, it seems too much to be interest for that short period of time. As Your Honor calculated, the interest should have been around $1,100 based on your calculation. Counsel, even if we don't turn to the Tax Injunction Act, couldn't we dismiss this on the basis of comedy? Respectfully, no, Your Honor. Why not? Because our contention is we have paid the full tax liability in full with interest and the 25% penalty. What they're claiming here, it's outside the state taxing scheme, outside any legitimate state taxing scheme. But as you just discussed with Judge Wesley, isn't it because of the statute, the state statute, that you had to pay this? But they have no basic, well, that's assuming that's, again, but that's not in the record. None of that's in the record. We try to get that information from- Counsel, even if they miscalculated and they're charging you too much interest, doesn't the Tax Injunction Act mean you need to seek remedy in the state courts? Well, that's not what they're doing. It's not that we have to determine that actually they accurately calculated all the taxes, but if this purports to be a tax collection, isn't that something that's covered by the Injunction Act? In this case, no, because to the extent that we have already paid off all the interest that had accrued, what they're assessing now is a penalty punitive, and that's not covered by the Tax Injunction Act. So before you sit down, can I ask one question about the excessive fines clause? So the Supreme Court has told us that at the time the Constitution was adopted, the word fine was understood to mean a payment to a sovereign as punishment for some offense. You don't think that they- Mr. DiMartino hasn't committed some kind of an offense, and this assessment was assessed against him as a punishment for that offense, do you? It's punitive to the extent that whatever the reason is, vindictiveness or whatever, they assess it, because they're assessing something above and beyond the interest that they're entitled to. That, by its nature, can only be punitive. It's not compensation for the loss of use of money caused by a delay in payment. That would be interest. Yeah, but that's the distinction between a tax and a penalty for purposes of the Tax Injunction Act, but now I'm asking about the excessive fines clause, which seems to prohibit excessive fines as punishment for criminal offenses. But that's not what we have here, right? It's not a criminal offense, Your Honor. Right. Okay, thank you very much, Mr. Ha. The case is submitted. Thank you, Your Honor.